UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNA GONZALES,<br><br>Plaintiff,<br><br>v.<br><br>NANCY BERRYHILL,<br><br>Defendant. | Case No. 4:17-cv-06855-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 21, 22 |

Plaintiff Joanna Gonzales seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

## I. BACKGROUND

On April 16, 2013, Plaintiff Joanna Gonzales protectively filed an application for social security disability benefits under Title II of the Social Security Act. Administrative Record ("AR") 22. She also protectively filed a Title XVI application for supplemental security income on April 30, 2013. *Id.* In both applications she claimed a disability onset date of November 1, 2012. *Id.* These claims were denied initially on October 21, 2013, and upon reconsideration on February 25, 2014. *Id.* On April 22, 2014, Plaintiff filed a written request for review of decision hearing. AR 181. A hearing was held before Administrative Law Judge ("ALJ") Phillip C. Lyman on December 2, 2015. AR 22-32. At the hearing, Herbert M. Tanenhaus, M.D., an impartial medical

expert, and Valerie Williams, an impartial vocational expert, testified. AR 22.

Plaintiff is fifty-six years old, and has a third grade education. AR 240, 245. Plaintiff has not been engaged in substantial gainful activity since her alleged disability onset date of November 1, 2012, which is based on a combination of impairments, including degenerative disc disease of the cervical and lumbar spine with radiculopathy, hepatic cysts, and major depressive disorder. AR 24, 243-50. Plaintiff previously worked as a childcare worker, delivery driver, and salesperson. AR 30, 58, 81.

On October 25, 2011, Plaintiff was screened for symptoms of bipolar disorder after she attempted suicide several months prior. AR 475. Plaintiff had been seeing a private psychiatrist, but had reportedly lost her insurance and could no longer afford treatment. *Id.* She reported a loss of appetite, insomnia, sadness, social avoidance, paranoia about people talking about her, and some auditory and visual hallucinations. *Id.* She was referred to Dr. Emily Wong, M.D., for further treatment. *Id.*

On March 7, 2012, Plaintiff presented to Sara Pinkel, M.D., her primary care physician, for headaches and allergies. AR 458. Dr. Pinkel noted that Plaintiff appeared anxious. AR 460. Plaintiff also received treatment for bilateral knee pain and back pain, and received physical therapy to address this pain. AR 453, 447-48, 396-404. On July 3, 2012, Plaintiff was treated for abdominal pain, and an ultrasound ultimately revealed cysts on Plaintiff's liver. AR 405-06, 444.

On October 11, 2012, Dr. Wong completed a statement to support continued state disability benefits. AR 476. Therein, Dr. Wong opined that Plaintiff had depressive disorder, which caused an inability to concentrate and difficulty in interacting with others, including explosive anger, impulsivity, and low mood. *Id*. Dr. Wong noted Plaintiff's mental health was complicated by her multiple physical conditions, and that she responded poorly to medications. *Id.* Dr. Wong opined Plaintiff would be unable to work until at least January 31, 2013, and would need to be reevaluated at that time. *Id.*

On November 13, 2012, Plaintiff's mental health counselor, Karen Ly, LCSW, noted that Plaintiff continued to struggle with unhealthy thinking patterns and emotional reactions to others, and that she presented with an anxious mood and restricted affect. AR 479. On November 19,

2012, Dr. Wong examined Plaintiff and noted her mood and appetite were poor, and diagnosed Plaintiff with depressive disorder NOS, and assigned a GAF score of 55. AR 480.

On November 27, 2012, Karen Ly noted that Plaintiff argued with her daughter and had been experiencing tearfulness and difficulty sleeping. AR 482. On December 5, 2012, Ms. Ly noted that Plaintiff struggled to manage her emotions and tended to have angry outbursts and yell at her relatives, but reported that she was not lashing out as intensely as before. AR 483. On December 18, 2012, Plaintiff was tearful and acknowledged her difficulty in managing her emotions, and her treatment goal was to reduce angry outbursts. AR 484.

On January 14, 2013, Dr. Pinkel treated Plaintiff for abdominal and back pain. AR 435. She noted that Plaintiff was worried about taking her medications for bipolar disorder and appeared anxious. AR 435, 437. On April 24, 2013, Dr. Pinkel opined that Plaintiff's impairments included back pain, abdominal pain, anxiety, and a mood disorder. AR 555.

On August 20, 2013, Plaintiff underwent a consultative mental health examination with Dr. Sara Boyd, PsyD. AR 491-97. Dr. Boyd noted that Plaintiff reported a history of depression, difficulty concentrating, and difficulty thinking clearly. AR 491. Plaintiff reported a history of suicidal ideation, but was not planning to act on it. *Id.* Plaintiff also reported that she had difficulty sleeping, and sometimes took Ambien or Benadryl to help her sleep. *Id.* Dr. Boyd tested Plaintiff's IQ, and opined that her full scale IQ score was 74. AR 493. Dr. Boyd diagnosed Plaintiff with major depressive disorder. *Id.*

On September 20, 2013, Plaintiff underwent a consultative medical examination performed by Darrell Corben, M.D. AR 498-504. Dr. Corben noted Plaintiff had ongoing abdominal pain and vomited weekly, experienced daily neck pain, and reported that she was undergoing treatment for depression. AR 498. Dr. Corben opined that Plaintiff could perform light work and should avoid hazards. AR 501.

On November 19, 2013, Dr. Wong noted that Plaintiff reported feeling paranoid about a stabbing she had witnessed and that she was afraid of having to testify in court. AR 562. Plaintiff continued to have trouble sleeping and had run out of medication due to being distracted by the stabbing and the resulting investigation. *Id.*

3

On December 13, 2013, Hoa Tuyet Ly, LCSW, noted Plaintiff had been anxious and depressed after having witnessed a gang-related stabbing of her boyfriend and her son. AR 524. She reported that she had seen Dr. Wong recently for medication, which was "helpful." *Id.* One week later, on December 20, 2013, Hoa Tuyet Ly, LCSW, noted that Plaintiff continued to experience anxiety and fearfulness regarding the person who stabbed her family members. AR 574.

On January 2, 2014, Hoa Tuyet Ly, LCSW, noted that Plaintiff continued to experience anxiety and irritability. AR 578. On January 27, 2014, Plaintiff was still anxious regarding the stabing incident, and was having trouble sleeping. AR 585. On April 8, 2014, Plaintiff saw Dr. Wong, and reported that she was fearful, because she had to testify in court against the person who stabbed her friend and son, and was concerned about retaliation. AR 601.

On April 16, 2014, Hoa Tuyet Ly, LCSW, noted that Plaintiff continued to isolate herself from others and felt unsafe due to the stabbing incident. AR 607. On June 9, 2014, Plaintiff reported being depressed about her family's involvement in the stabbing prosecution. AR 615. Plaintiff was not taking all of her medications, because she felt that she took too many and feared adverse interactions. *Id.*

On September 30, 2014, Plaintiff reported to Dr. Wong that her anxiety had decreased somewhat, and that "denial" is working for her in that respect. AR 625.

On December 3, 2014, Giselda Tan, M.D., began seeing Plaintiff, because Dr. Wong had left the practice. AR 630. Plaintiff reported that her mood had been stable, because she had been taking her medications regularly, which made her depression "a lot less." *Id.* Even so, Plaintiff reported continued trouble sleeping. *Id.*

On January 14, 2015, Dr. Tan noted that Plaintiff still reported that she was "less" depressed, but still had problems falling and maintaining sleep. AR 636. On March 19, 2015, Plaintiff saw Dr. Tan, who noted that Plaintiff had gotten shingles and had to stop taking her mental health medications because she was vomiting. AR 641. Plaintiff presented as frustrated and depressed. AR 642. Dr. Tan advised Plaintiff that she needs to continue her Prozac. *Id.*

On April 30, 2015, Plaintiff was seen by Dr. Tan, who noted that Plaintiff reported that she

4

had been taking her medications as prescribed most of the time, and had been feeling generally well and not depressed, but that she had been feeling down for the past few days. AR 647.

On June 3, 2015, Plaintiff saw Dr. Tan, and reported that she was still taking her medications as prescribed most of the time, but that a nurse had also been calling to remind her. AR 653. Plaintiff still reported that she was sleeping poorly. *Id.* On July 6, 2015, Plaintiff saw Dr. Tan and reported that she continued to sleep poorly at night, which was making her irritable, but not depressed. AR 661.

On October 1, 2015, Plaintiff saw Dr. Tan. AR 671. Plaintiff reported that her depression was not as constant as before, but that she was staying away from people who irritated her. AR 671. Plaintiff reported trouble sleeping due to her physical pain, and said that Dr. Pinkel had referred her for a sleep study. *Id.*

On November 20, 2015, Madhumita Banerjee, LCSW, noted that Plaintiff had poor motivation, low energy, and was easily annoyed and angered. AR 688. Plaintiff expressed frustration with her physical ailments. *Id.* Throughout 2015, Plaintiff was treated for multiple physical issues, including nausea, headaches, sinus pain, dizziness, shingles, neck pain, and worsening lower back pain with difficulty walking. AR 709-41, 747-54.

At the hearing, vocational expert ("VE") Valerie Williams testified. AR 22. The VE identified Plaintiff's past work as that of a childcare worker, delivery driver, and a salesperson. AR 81. The ALJ asked the VE to consider the residual functional capacity ("RFC"), and the VE replied that Plaintiff's past work as a salesperson would be suitable and the childcare worker position would be suitable as generally performed. AR 87. The VE also identified the additional occupations of cashier II and bench assembler as positions that Plaintiff could perform with her RFC. AR 88.

At the hearing, Herbert M. Tanenhaus, M.D., testified as a medical expert. AR 22. Dr. Tanenhaus testified that Plaintiff had a diagnosis of depression and affective disorder, in addition to an IQ score of 74. Dr. Tanenhaus opined that Plaintiff would be moderately impaired in her ability to maintain concentration, persistence, and pace. AR 69. He further testified that Plaintiff would be able to do simple tasks, but that complex tasks would be beyond her abilities. AR 70-71.

1        An unfavorable decision was issued on January 11, 2016.  AR 22-37.  A request for review of the hearing decision was filed with the Appeals Council on March 3, 2016.  AR 208-09.  The Appeals Council notified Plaintiff that it was granting review on May 31, 2017. AR 4.  On September 12, 2017, the Appeals Council issued a decision, in which it adopted the ALJ's findings at steps 1, 2, and 3 of the sequential evaluation, but disagreed with the ALJ's finding at step 4 that Plaintiff could perform past relevant work.  AR 4, 6. Nonetheless, the Appeals Council found that there was work she could perform, such that she was not disabled, as defined by the Social Security Act. AR 7, 9.  On November 29, 2017, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. §405(g).

On August 13, 2018, Plaintiff filed a motion for summary judgment. (Pl.'s Mot., Dkt. No. 21.)  On September 12, 2018, Defendant filed an opposition and cross motion for summary judgment.  (Def.'s Opp'n, Dkt. No. 22.)  On September 26, 2018, Plaintiff filed a reply. (Pl.'s Reply, Dkt. No. 23.)

## II.   LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in

substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III.  THE ALJ'S DECISION AND THE APPEALS COUNCIL'S DECISION

As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act as of December 31, 2015. AR 24.

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since November 1, 2012, the alleged onset date. AR 24.

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine with radiculopathy; hepatic cysts of an unclear etiology; hypervascular lesions secondary to benign focal nodular hyperplasia; major depressive disorder; and a remote history of drug abuse, in reported long-term remission. AR 24.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination

of impairments that met or medically equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 25.

Before considering step four, the ALJ determined that Plaintiff has the residual functional capacity to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with some exceptions:

> She can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in an eight- hour workday; and sit without limitation in an eight-hour workday, with normal breaks. The claimant can climb ladders and/or scaffolds on a less than occasional basis. She has no manipulative or communicative limitations. The claimant must avoid all exposure to hazards, such as unprotected heights and heavy, moving, and/or dangerous machinery. She has no limitation in her ability to understand, remember, and carry out short simple instructions; make judgments regarding simple decisions; interact appropriately with supervisors, coworkers, and the public; and respond appropriately to normal work pressures and routine changes in the workplace. The claimant has slight limitation in her ability to understand, remember, and carry out complex detailed instructions. A slight limitation is one that precludes performance of a given function for less than 10% of an eight-hour workday. The claimant would be expected to be absent from work less than one day per month.

AR 26.

At step four, the ALJ concluded that Plaintiff was able to perform past relevant work as a salesperson and a childcare worker, both as generally and actually performed. AR 30. Notwithstanding, at step five, the ALJ concluded that there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including cashier and bench assembler. AR 32-33. Accordingly, Plaintiff was not disabled for the purposes of the Social Security Act. AR 32.

The Appeals Council, however, modified the ALJ's finding at step four, and determined that Plaintiff was not capable of performing past relevant work as "a salesperson (general merchandise) as generally and actually performed, or as a childcare worker, as generally performed." AR 4-5. This was due to her "moderately severe limitation upon concentration, persistence or pace with regard to her mental impairment (major depressive disorder) and given the mental component of the residual functional capacity." AR 6. Regardless, the Appeals Council found that Plaintiff could perform the work of Cashier II and Bench Assembler, such that

8

1    she was not disabled as defined by the Social Security Act. AR 9.

**IV.    DISCUSSION**

In her motion for summary judgment, Plaintiff argues that the ALJ and the Appeals Council erred in denying her application for social security benefits, and that the case should be remanded for payment of benefits or, alternatively, for further proceedings, for three reasons: 1) the ALJ and the Appeals Council improperly rejected the medical evidence; 2) the ALJ and the Appeals Council improperly rejected Plaintiff's testimony; and 3) the ALJ and the Appeals Council improperly rejected lay witness testimony. (Pl.'s Mot. at 13, 18, 21.)

**A.    The ALJ and Appeals Council did not err in rejecting the medical evidence.**

Plaintiff argues that the Appeals Council and the ALJ erred by rejecting the medical opinions of Dr. Sara Boyd, Dr. Emily Wong, and Dr. Tanenhaus. (Pl.'s Mot. at 14-17.) Defendant contends that the Appeals Council "gave good reasons supported by substantial evidence for the weight it gave to the various opinions in the record." (Def.'s Opp'n at 2.)

In evaluating medical evidence from different physicians, the Ninth Circuit distinguishes among the opinions of three types of physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The three types are classified as (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Id.* A treating physician's opinion is entitled to controlling weight if it is well supported and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the record contains conflicting medical evidence, the ALJ must make a credibility determination and resolve the conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence...." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is

9

brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citations omitted). Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is accepted as true. *Chater,* 81 F.3d at 834.

In the instant case, the Appeals Council gave partial weight to one of examining psychologist Dr. Boyd's findings and significant weight to her other findings, gave little weight to the opinion of Dr. Wong (treating source), and gave significant weight to the testimony of Dr. Tanenhaus (testifying medical expert). AR 4-5, 29-30.

### i. Dr. Sara Boyd

On August 20, 2013, Plaintiff underwent a consultative psychological evaluation performed by Sara Boyd, PsyD. AR 491-497. Plaintiff reported a history of depression, difficulty thinking clearly, and insomnia on that date. AR 491. Upon examination, Dr. Boyd observed a euthymic mood with a somewhat flat affect. AR 492. Dr. Boyd administered Wechsler Adult Intelligence Scale - Fourth Edition (WAIS-IV) testing to assess Plaintiff's intellectual functioning, producing a verbal comprehension index score of 80, a perceptual reasoning index score of 82, a working memory index score of 71, a processing speed index score of 76, and a full scale IQ score of 74. AR 492-93. Dr. Boyd diagnosed Plaintiff with chronic moderate to severe major depressive disorder with a global assessment of functioning ("GAF") score of 64. AR 493-94. Dr. Boyd opined that Plaintiff's "overall clinical presentation is that of an individual with mixed (average to below-average) cognitive abilities." AR 494. It was Dr. Boyd's opinion that Plaintiff would have no impairment in her ability to accept instructions and interact appropriately with supervisors. *Id.* Dr. Boyd indicated that the claimant would experience mild impairment in her ability to understand, remember, and carry out simple to complex instructions; relate and interact with co-workers and the public; and maintain concentration, attention, persistence, and pace. *Id.* Dr. Boyd believed that the claimant would have moderate impairment in her ability to perform and sustain day-to-day work activities, including issues of attendance and safety. *Id.* Dr. Boyd opined that the claimant would experience moderate to severe impairment in her ability to deal with changes, stress, or ambiguous situations due to her depression. *Id.* The ALJ found Dr. Boyd's opinion to be

1  generally consistent with the relevant medical evidence of record, and afforded it significant
2  weight insofar as it comported with the residual functional capacity. AR 29.

3　　　　The Appeals Council, however, assigned less weight to the portion of Dr. Boyd's opinion
4  that Plaintiff would have moderate to severe impairments in her ability to deal with changes,
5  stress, or ambiguous situations, because that limitation was not reflected in the examination
6  results. AR 5. The Appeals Council noted that Plaintiff demonstrated the ability to make realistic
7  plans and anticipate the consequences of her actions, she was oriented and alert, with a euthymic
8  mood and congruent mood and thought content, as well as pleasant, subdued, and respectful, and
9  she understood her condition and the need for treatment. AR 5. The Appeals Council assigned
10  significant weight to Dr. Boyd's remaining findings. AR 5.

11　　　　Plaintiff argues that the Appeals Council has not provided clear and convincing reasons to
12  discount the critical portion of Dr. Boyd's opinion indicating Plaintiff's most serious deficits
13  would be in her ability to handle changes, stress, and ambiguous situations. (Pl.'s Mot. at 16.)
14  Specifically, Plaintiff argues that the fact that she presented as pleasant, oriented, and in a good
15  mood during the examination has "no bearing on whether [] she can handle changes, stress, or
16  unexpected situations in a work setting. An ability to make realistic plans and anticipate
17  consequences does not address Plaintiff's ability to handle situations that may be unexpected." *Id.*
18  at 15-16.

19　　　　In opposition, Defendant argues that the Appeals Council was correct in assigning partial
20  weight to this portion of Dr. Boyd's opinion. (Def.'s Opp'n at 4 (citing AR 5, 494).) Defendant
21  points out that Dr. Boyd assigned Plaintiff a Global Assessment of Functioning ("GAF") score of
22  64, indicating mild symptoms. (Def.'s Opp'n at 4.)

23　　　　The Appeals Council explained why it was assigning partial weight to the portion of Dr.
24  Boyd's opinion at issue, namely that the opinion contradicted her own examination results. AR 5.
25  It is notable that the Appeals Council gave significant weight to the other five findings pertaining
26  to Plaintiff's functional ability. AR 494. Thus, the undersigned finds that the Appeals Court
27  provided adequate reason to discount Dr. Boyd's finding that Plaintiff had a moderate to severe
28  impairment in regard to dealing with changes, stress, or ambiguous situations.

### ii. Dr. Emily Wong

Emily Wong, M.D. is a psychiatrist and treating source, although Plaintiff only saw her monthly to obtain her prescriptions. *See* AR 75, 476, 562.

The Appeals Council acknowledged that the ALJ did not address the opinion of Dr. Wong. AR 5. In evaluating and weighing Dr. Wong's treating source opinion, the Appeals Council assigned it little weight, because the psychiatric progress notes were inconsistent with Dr. Wong's opinion regarding Plaintiff's ability to function. *Id.* Dr. Wong opined that Plaintiff's condition caused an inability to concentrate and difficulty interacting with others due to explosive anger. AR 476. The Appeals Council found that Dr. Wong's progress notes do not report or reflect explosive anger, and, instead, show that Plaintiff was progressing toward her goals and was described as "engaging and cooperative." AR 5, 575. The Appeals Council also cited progress notes from Dr. Giselda Tan, M.D., staff psychiatrist, on April 30, 2015, where Dr. Tan described Plaintiff's mood as mildly depressed, but that she was also "[o]pen and engaging at this visit." AR 5, 648. As a result, the Appeals Council found that Dr. Wong's opinion was "inconsistent with the claimant's treatment notes and not supportive of her opinion of the claimant's mental limitations," and assigned it little weight. AR 5.

Plaintiff argues that the treatment notes from her treating counselor, Karen Ly, LCSW, reflect episodes of explosive anger towards family members, including screaming arguments, and reflect Plaintiff's difficulty controlling her emotions. (Pl.'s Mot. at 17-18 (citing AR 482-87).) Plaintiff also cites to records from her former employer confirming that she was disciplined and suspended from work on more than one occasion because of problems getting along with coworkers. (Pl.'s Mot. at 18 (citing AR 363-66).) Thus, Plaintiff contends that the Appeals Council erred in rejecting Dr. Wong's opinion without providing clear and convincing reasons. (Pl.'s Mot. at 18.)

In opposition, Defendant argues that Dr. Wong's October 2012 opinion came one month before Plaintiff's alleged onset date of November 1, 2012. (Def.'s Opp'n at 5.) Moreover, Defendant argues that the Appeals Council found that Dr. Wong's opinion was inconsistent with another LCSW's progress note from December 20, 2013 that Plaintiff was "engaging and

cooperative." (Def.'s Opp'n at 5 (citing AR 575).)

Defendant's arguments are well taken. Dr. Wong's October 2012 one-page statement was prior to Plaintiff's alleged onset date, and was completed to obtain a temporary extension of state disability benefits to January 31, 2013. *Id.* At the hearing, the ALJ stated on the record that Dr. Wong's statement predated the alleged onset date, a fact conceded by Plaintiff's counsel. AR 74-76. The Court notes that the employment records cited also predate the alleged onset date by as many as three years. AR 363-66. Similarly, Karen Ly's treatment notes are from November 27, 2012 to January 3, 2013, a timeframe of less than three months. AR 482-87. In fact, Ms. Ly's notes from December 5, 2012 state that Plaintiff reported that "she's not lashing out [as] intensely as before," which suggests that Plaintiff's anger issues were improving. *See* AR 483.

Moreover, the remaining medical records suggest that Plaintiff's depression was becoming more manageable once she began taking her medication more regularly. In September 2014, Plaintiff reported to Dr. Wong that her anxiety had decreased, and, by December, Plaintiff reported to Dr. Tan that her depression was "a lot less" due to complying with her medication regimen. AR 625, 630. In 2015, with the exception of the few weeks when she was off her medications due to shingles, Plaintiff repeatedly reported that she was either less depressed or not depressed. *See* AR 607, 615, 636, 641-42, 647, 653. On July 6, 2015, Plaintiff reported that, even though poor sleep made her irritable, she was not depressed. AR 661. In October 2015, Plaintiff again reported that her depression was not as constant as before. AR 671.

As a result, the Appeals Council finding that Dr. Wong's opinion was inconsistent with Plaintiff's treatment notes is a specific and legitimate reason for assigning little weight to her opinion.

### iii. Dr. Herbert M. Tanenhaus

At the hearing, Dr. Herbert M. Tanenhaus, M.D., testified as a medical expert. AR 22. Based upon a review of the medical record, Dr. Tanenhaus testified that Plaintiff had a diagnosis of depression and affective disorder, and possessed a full scale IQ score of 74. AR 69. Dr. Tanenhaus opined Plaintiff would be moderately impaired in her ability to maintain concentration, persistence, and pace. *Id.* Dr. Tanenhaus further opined that Plaintiff could complete simple,

13

repetitive tasks, would experience moderate limitations in performing detailed tasks, but that complex tasks would be beyond her ability. AR 70-71. The ALJ gave great weight to Dr. Tanenhaus's opinion, and adopted it. AR 30.

Plaintiff argues that, while the ALJ purported to adopt Dr. Tanenhaus' opinion, the ALJ's RFC did not account for Dr. Tanenhaus's opinion that Plaintiff could not perform complex tasks and would be moderately limited in her ability to perform detailed tasks. (Pl.'s Mot. at 16.) The RFC allowed for a "slight limitation in her ability to understand, remember, and carry out complex detailed instructions." *Id.*; AR 26. A slight limitation was defined as precluding the performance of an activity for less than 10 percent of an eight-hour work day. AR 26. Plaintiff contends that this RFC does not adequately incorporate Dr. Tanenhaus's opinion, because, according to the DOT, the jobs the ALJ and the Appeals Council found Plaintiff could perform at step five, cashier II and bench assembler, have [General Education Development ("GED")] Reasoning Levels of 3 and 2 respectively." (Pl.'s Mot. at 16.)

In opposition, Defendant contends that Plaintiff mischaracterizes the record, and that Dr. Tanenhaus's testimony did not limit Plaintiff to simple work. (Def.'s Opp'n at 3-4.) Defendant points out that Dr. Tanenhaus testified that Plaintiff could perform both simple and moderately complex or detailed work. (Def.'s Opp'n at 4 (citing AR 70-71).)

Pursuant to the Directory of Occupational Titles, Reasoning Levels 1 through 3 are as follows:

> LEVEL 3
> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.
>
> LEVEL 2
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> LEVEL 1
> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DOT, App. C - Components of the Definition Trailer, 1991 WL 688702 (Jan. 1, 2016). Despite

1 Plaintiff's claim to the contrary, Level 2 reasoning has been found to be consistent with the ability to perform simple and routine work tasks. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)). Here, there is no dispute that Plaintiff is able to perform simple and routine tasks. The Appeals Council found that Plaintiff could perform the position of bench assembler, which only requires Level 2 reasoning. AR 8. Thus, even if Plaintiff does not have the RFC to perform Level 3 reasoning, and, therefore, cannot perform the work of Cashier II, the Appeals Council's error would be harmless, because the other position identified at step five could be performed by Plaintiff.

Accordingly, the ALJ and the Appeals Council did not err in weighing the opinions of Drs. Boyd and Wong, and any error in weighing Dr. Tanenhaus's opinion would be harmless.

**B.     The ALJ and Appeals Council erred by improperly rejecting Plaintiff's testimony.**

Plaintiff argues that her medically determinable impairments could reasonably be expected to cause the alleged impairments, and the ALJ failed to properly discredit her testimony. (Pl.'s Mot. at 19.) Defendant contends that the ALJ and Appeals Council properly evaluated Plaintiff's symptoms in finding her not entirely credible. (Def.'s Opp'n at 6.)

Disability benefits cannot be granted based only on a claimant's subjective complaints. *See* 42 U.S.C. §§ 416 (d)(5)(A), 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"). In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir.2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's

15

complaints; general findings are insufficient. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. AR 27. For example, the ALJ found that her claim that she is unable to sustain gainful employment was "contradicted by evidence in the record that [she] can perform a wide range of activities of daily living, such as preparing basic meals, washing dishes, watering plants, laundering clothes, and grocery shopping, without significant issue." AR 27. The ALJ also cited to Plaintiff's church attendance as contradicting her claim that she had significantly reduced social functioning. *Id.* The Appeals Council added that Plaintiff's ability to drive and take care of pets were daily activities inconsistent with Plaintiff's claimed limitations. AR 6.

Plaintiff contends that the ALJ improperly singled out a few periods of temporary well-being in an attempt to discredit Plaintiff, and further argues that the activities of daily living cited by the ALJ are not inconsistent with her claimed limitations. (Pl.'s Mot. at 19.) The Ninth Circuit has recognized that "[c]ycles of improvement and debilitating symptoms are a common occurrence [in mental health impairments], and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Plaintiff argues that her ability to attend church once per week for a one-hour service, among familiar people, does not demonstrate that she has the ability to sustain the social functioning required to perform full-time work. (Pl.'s Mot. at 20.) To the contrary, Plaintiff argues that her records from her prior employer reveal that she was disciplined and suspended because of her inability to get along with her coworkers, while her mental health treatment records show that she was eventually fired for this reason. AR 363-66, 677.

In opposition, Defendant argues that the ALJ and Appeals Council properly regarded Plaintiff's daily activities as inconsistent with allegations of disability. (Def.'s Opp'n at 8.) In so doing, the ALJ compared Plaintiff's allegations to other evidence in the record, including medical

16

source opinions, and, primarily agreeing with the opinions of Dr. Boyd, Dr. Tanenhaus, and Dr. Corben, provided valid reasons to discount Plaintiff's credibility. *Id.*

The Court agrees. As discussed above, the medical evidence in the record regarding Plaintiff's mental health do not support the severe limitations Plaintiff is claiming. *See* discussion, *supra,* Part IV.A. Indeed, by all accounts, as of 2015, Plaintiff was showing vast improvement in managing her depression, anger, and stress, and Plaintiff's complete record was considered by Dr. Tanenhaus in rendering his medical opinion. *See ids.* Therefore, the ALJ provided specific, specific and convincing reasons to undermine Plaintiff's subjective complaints.

### C. The ALJ and the Appeals Council erred in rejecting lay witness testimony.

Plaintiff argues that the ALJ and Appeals Council erred in rejecting the questionnaires completed by her son, Aaron Lechuga, describing her limitations. (Pl.'s Mot. at 22.) Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must consider and cannot dismiss without comment. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). "To reject third-party reports of a claimant's impairments, the standard is much lower: an ALJ need only 'give reasons that are germane to each witness.'" *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quoting *Molina*, 674 F.3d at 1114).

Here, Mr. Lechuga completed two questionnaires describing Plaintiff's limited ability to sit, stand, walk, lift, get along with others, follow directions, and manage stress and changes in routine. AR 272-80, 314-22. In the first questionnaire, dated June 28, 2013, Mr. Lechuga noted that Plaintiff was often sick, in pain, slept poorly at night, and did not bathe often. AR 272-73. He reported that she needed reminders to take her medication, tires easily, and was easily irritated and angered. AR 274-77. He noted that Plaintiff did not follow instructions very well, and that she had difficulty managing stress, but that she is "okay with changes" to routine. AR 277-78. He noted that he did not believe that his mother had ever been fired or laid off due to problems getting along with people. AR 278.

In the second questionnaire, dated January 31, 2014, Mr. Lechuga reported that Plaintiff could not lift heavy objects, had trouble getting along with others, and slept poorly at night. AR

314-15. He again noted Plaintiff's difficulty following instructions, both written and spoken. AR 319. Now, however, he noted that Plaintiff had difficulty with changes in routine. AR 320. Additionally, Mr. Lechuga now reported that he knew that Plaintiff had been terminated from past employment because she did not get along with people, and explained that she did not get along with her boss and "some coworker." AR 320.

In opposition, Defendant contends that the ALJ discussed Mr. Lechuga's statements, and noted that he alleged the same limitations, activities, and symptoms as Plaintiff. (Def.'s Opp'n at 8 (citing AR 27)).

The Court agrees. Furthermore, since the standard is lower to reject lay witness testimony, the ALJ's articulated reasons for rejecting Plaintiff's own symptom allegations are sufficient to reject Mr. Lechuga's statements. Additionally, the Court notes that Mr. Lechuga's second questionnaire describes significantly more severe limitations and included details that were unknown to him when he filled out the first questionnaire seven months earlier regarding Plaintiff's prior termination. This also lends to the ALJ's opinion Mr. Lechuga's testimony is not entirely credible.

Accordingly, the ALJ and Appeals Council did not err in rejecting the lay opinion of Mr. Lechuga.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED, Defendant's cross-motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: March 29, 2019

KANDIS A. WESTMORE
United States Magistrate Judge

18